Reed, J.,
delivered the opinion of the court.
It is proper and charitable to presume that this is one of those unfortunate cases where, from want of business ability, or as a result of a misunderstanding of the items embraced in plaintiff’s proposition, defendant was honestly misled ; otherwise she was chargeable with great dishonesty. By the provisions of the mortgage; appellant had the right to take possession of the property, and sell at-public or private sale, in case an attachment was levied upon the goods. They had been attached, and he .had taken the possession. The writing was an authorization to sell at a-price of $500. ■ The *557 making and execution of the writing is admitted. It is sought to be avoided on the ground of ignorance of its contents and fraud of the plaintiff in procuring it. The writing appears to have been entirely ignored upon the trial. The jury were not instructed in regard to it, nor required to find upon its validity, which was the only important issue in the case. The trial appears to have proceeded upon alleged oral statements preceding the execution of the paper. Upon these the jury was instructed, without being required to find whether or not the paper was a fraud upon the defendant. The jury should have been instructed that, if no fraud was practiced upon the defendant'by the plaintiff in obtaining the writing, and she knew at the time of the execution of it that it contained the $500 limit, then that all evidence in regard to the cost or value of the property and of the statements of plaintiff preceding the execution of the paper should be disregarded. If it was void by reason of fraud, then resort could be had to the conversations preceding it, not otherwise; and it would control.
The evidence in regard to what transpired previous to the signing, and the circumstances attending the making and signing of the instrument, is very contradictory. Defendant, in her testimony, when asked in regard to the agreement plaintiff read to her, said that he agreed to pay her $65.00 or $100 after indebtedness was paid off, and that it was in the agreement to sell it to Powers for $500 or more, and pay off the indebtedness; and that, when she signed the paper, he told her he would do the best he could for her. And again, on cross-examination, in answer to the question whether at the time she signed the agreement she understood she was giving him authority to sell at $500, she said that he was to sell the gallery for $500 or more; enough to pay off the indebtedness.
Here are two admissions that she knew the contents of the paper, and of the minimum limit of $500. Consequently her right to recover must have been based, not upon the contract, but the promise to get more if he could, or enough to *558 pay the debts, and have a balance of $65.00 or $100. After these admissions of knowledge of the contents of the paper, the jury should have been instructed that the contract controlled, and all evidence in regard to alleged extraneous promises and statements must be disregarded. Failing to so instruct, it is evident that the jury regarded the matter not embraced in the contract as controlling, and a proper basis for a judgment.
I am at a loss to determine from the record upon what theory the defense and cross complaint was based. The agency and authority to sell having been established by all the evidence, and the minimum price fixed in the written authority admitted b}- McCloskey, and the sale having been made to a third partjr, and there being no evidence or claim that the agent received more than he accounted for, or that, by collusion with the purchaser, he was to receive some consideration or benefit from the sale, or that some other person offered a greater price, and the minimum fixed by the owner having been received and accounted for, no legal cause of action is presented, nor defense against the note shown, by any matters connected with the agency or sale. Had the agent sold for more than the designated $500, and fraudulently appropriated the surplus, the excess unaccounted for could have been recovered. Had he converted the goods to his own use, or collusively sold them so as to receive benefits himself, he could have been made responsible for their market value. But as no such conditions existed, and no fraud was shown or attempted, there was no legal set-off or counterclaim ; and evidence of the value of the goods, as testified to by defendant, was inadmissible, and must have been prejudicial to the appellant. A principal cannot collect from an agent, where no fraud or Adolation of instructions is shown, the difference between what the goods actually sold for and what the owner thought them to be worth. The instruction of the court, and the theory of the law upon which it was tried, are so at variance with our views of the law, the judgment Avilh be reversed, and the cause remanded for a new trial.

Reversed.